THE STATE OF KANSAS v. RICHARD C. MEADE.

No. 10481.

1. DISTINCT ACTS, *When Distinct Crimes — When not — Indictment.* Where, under a statute, several distinct acts connected with the same general offense and subject to the same penalties are punishable separately and as distinct crimes when committed by different persons or at different times, they may, when committed by the same person at the same time, be considered as representing steps or stages in the same offense, and may be combined in the same count of an indictment or information, and treated as a single violation of law.

2. ———— *Extradition.* After extradition, the defendant was convicted of obtaining money by false pretenses, under section 94·of the crimes act. *Held,* Upon an examination of the original warrant and the information, that he was convicted of the offense for which he was extradited.

*Appeal from Atchison District Court.*

RICHARD C. MEADE was convicted of obtaining money by false pretenses. He appeals. The facts are stated in the opinion, filed April 11, 1896.

*Thos. J. White,* and *Henry Elliston,* for appellant.

*F. B. Dawes,* attorney general, *C. D. Walker,* county attorney, and *J. L. Berry,* for The State.

The opinion of the court was delivered by

JOHNSTON, J. : Richard C. Meade was charged with fraudulently and by false pretenses having obtained from Fanny Pilkington the sum of $215. The means

alleged to have been employed by him were that he represented to her that George A. Vining desired to obtain a loan of $215 for three years on real-estate security, and he produced a note for that amount to which were attached six interest coupons, and a mortgage upon certain real estate in Atchison, all of which purported to be signed by George A. Vining and Mary Vining. He represented the papers to be genuine, and induced her to sign a check drawn upon her funds which were on deposit in a bank, and with the check drew from such funds money of Fanny Pilkington to the amount of $215, and converted the same to his own use. It is alleged that the note, coupons and mortgage were false, forged, and fictitious; that the defendant had forged the names to each of them; and that these false and forged writings were delivered and the false pretenses and representations were made for the purpose of cheating and defrauding Fanny Pilkington out of the sum of $215. The offense was committed on May 24, 1892, but the false and forged instruments and papers were dated June 1, 1892. After the offense was committed, the defendant fled the state. A complaint was subsequently filed, charging him with the offense, and after the issuance of a warrant extradition papers were obtained, upon which he was returned from the state of New York.

The defendant insists that he was extradited for one offense and convicted of another. The claim is that in the original warrant he was charged with obtaining the signature of Fanny Pilkington to a check by false pretenses, while the charge upon which he was convicted was the obtaining of money from her by false pretenses. The means used by him in obtaining the money were set out in the warrant with

great detail, and procuring her to sign the check upon which her money was drawn from the bank is mentioned as one of the steps in the scheme. The averments in the warrant show plainly enough that the principal complaint was the obtaining of the money, and after a casual reading of the same the defendant could have had no difficulty in ascertaining the offense with which he was charged. The information was in two counts, but the state, upon motion of the defendant, was required to and did elect to stand upon the second count, and for that reason the charge contained in the first count is no longer important. In the second count, like the warrant, it was charged that the money was obtained by false representations and pretenses, and it recited at length the making and use of the false note, coupons, and mortgage, as well as the fact that the money was finally obtained from her upon a check which he had induced her to sign. The warrant and the information were both drawn with unnecessary fullness and particularity. Every step in the scheme to obtain the money was set out at length, and hence no mistake could have been made by the defendant as to the offense of which he was accused. It is argued that the charge embraced more than a single offense. While the warrant and the information both stated facts which, of themselves, might, under some circumstances, be treated as separate offenses, it is manifest that they were only pleaded as different steps and stages in the single offense of obtaining money under false pretenses. In the same connection, it is urged that the second count of the information charged two separate and distinct felonies — first, obtaining a signature to a written instrument by false pretenses, and also obtaining money

by false pretenses, and is therefore bad for duplicity. The acts mentioned are connected with the same general offense, and under section 94 of the crimes act are punishable separately as distinct crimes when they have been committed by different persons or at different times. However, when they have been committed by the same person at the same time, they may be coupled together in a single count as constituting a single offense. In such cases each one of the acts may be considered as representing a step or stage in the same offense, and all combined may be set forth in the same count and treated as a single violation of law. (*The State v. Pryor*, 53 Kan. 657.)

In the warrant it is alleged that the check was signed on June 1, 1892, whereas the information charges and the proof shows that it was signed on May 24, 1892. The discrepancy in the date is not fatal nor very important, as the check is only an incident in the transaction. It appears, too, that no other transaction of a like character was had between the defendant and Fanny Pilkington at or near the time mentioned, and the particularity with which every detail of the transaction was set out could have left no doubt in the mind of the defendant as to the specific offense he was required to answer. The discrepancy probably arose because the complaining witness did not have the possession of the check when the prosecution was begun, and as the defendant had postdated the mortgage, bond and coupons to June 1, 1892, it was assumed that the latter date was the time when the transaction occurred.

Under the testimony, the court ruled correctly in denying the motion for a change of venue, and none of the rulings of the court in instructing the jury are deemed to be erroneous. Judgment affirmed.

All the Justices concurring.